| .WHIPPLE, Judge.
This matter is before us on appeal by plaintiff, Diamond B Construction Company, Inc., (hereinafter “Diamond B”) from a judgment of the trial court denying plaintiffs motion for a temporary restraining order and preliminary injunction challenging the bidding specifications on a project under the Louisiana Public Bid Law. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Diamond B, sought a temporary restraining order and preliminary injunction to prevent the Louisiana Department of Transportation and Development (hereinafter “the DOTD”) from accepting bids, issuing work orders, allowing work to proceed, performing work and/or taking any other action in furtherance thereof on *437 its state project involving U.S. Highway 171 from Hornbeck to Florien (hereinafter “the project”). Essentially, Diamond B contended that the DOTD violated the prohibition against closed specifications in public works projects under LSA-R.S. 38:2290 et seq.[2] by specifying that Portland cement concrete pavement be used in the construction on the project and refusing to permit the use of asphaltic concrete. A “closed specification” is defined in LSA-R.S. 38:2296A as “a product specified to the exclusion of all other products of apparent equal quality and utility.”
As set forth in Diamond B’s petition, the DOTD advertised the contract for bid on January 26, 2000. The project at issue is part of a larger, overall program |3of construction to significantly upgrade U.S. Hwy. 171 from Shreveport to Lake Charles. By letter, Diamond B formally requested the inclusion of asphaltic concrete in the specifications for the project as an alternative to Portland cement concrete pavement. However, the DOTD refused to alter the project specifications to provide for the use of asphaltic concrete as an alternate material. Diamond B filed suit against the DOTD, seeking a preliminary injunction as well as declaratory judgment holding that specifications requiring Portland cement concrete pavement in public works projects constituted illegal closed specifications and further that any contract entered into for this project is absolutely null.
The DOTD filed an answer and recon-ventional demand, wherein it sought a declaration that there was no violation of the closed specification statutes by not including alternative designs for pavement or any other components in DOTD bid documents for any project. Jones Brothers, Inc. of Tennessee, the lowest bidder on the contract, intervened, as did Concrete and Aggregates Association of Louisiana, Inc.; both intervenors united with the DOTD to resist Diamond B’s demands.
The trial court held a hearing on the request for preliminary injunction on March 14, 2000. Documentary evidence was introduced and the matter was set for additional argument and ruling on April 4, 2000. On that date, the trial court denied the preliminary injunction, finding that in the absence of a controlling statute, where the “thing” to be furnished can be manufactured by anyone in precise conformity to certain and specific requirements or purchased on the open market at a standard price, there is no violation of the closed specifications law.
From this ruling, Diamond B sought supervisory writs and requested that this court reverse the trial court and grant the preliminary injunction as prayed for. |4While the writ application was pending, however, the trial court granted summary judgment in favor of the DOTD, dismissing plaintiffs suit on the merits at its costs, citing the same reasons given for the denial of the preliminary injunction.
Thus, by order dated' August 4, 2000, this court denied the application for writs, noting that the trial court had rendered judgment on the merits dismissing the suit in its entirety; appeals had been taken from both the denial of the injunction and the dismissal of the suit on the merits[3], docketed as 00 CA 1323 and 00 CA 1583, respectively, involving the same issues; and the appeals were being expedited in ■ accordance with court rules. Thus, this court declined to exercise supervisory jur *438 isdiction and denied the application for writs.[4]
On appeal, plaintiff challenges the denial of the preliminary injunction and assigning the following as error:
A. The District Court erred in not following controlling Louisiana Supreme Court decisions inter alia in Stevens Concrete Pipe & Products, Inc. v. Burgess, [, 252 La. 136, 209 So.2d 733 (1968) ] and Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board [, 586 So.2d 1354 (La. 1991) ] to interpret “product” so as to exclude Portland cement concrete and asphaltic concrete when used in highway pavements and in failing to apply the Louisiana Civil Code to interpret the law in accordance with its purpose and policy.
B. The District Court erred when it denied preliminary injunctive relief to Appellant. The trial court should have determined that asphaltic concrete pavement and Portland cement concrete pavement are of equal quality and utility, and issued a preliminary injunction to halt construction of the project.
DISCUSSION
Plaintiff -first' contends that the trial court erred by failing to follow Stevens Concrete Pipe & Products, Inc. v. Burgess, 252 La. 136, 209 So.2d 733 (1968) and Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354 (La.1991).
For the reasons set forth in the companion case of Diamond B Construction, Inc. v. Louisiana Department of Transportation and Development, 00-1583 (La.App. 1st Cir.12/22/00), 780 So.2d 439, also rendered this date, we find no merit to this claim. As noted therein, Stevens is readily distinguishable from the instant case. As discussed at length therein, we conclude that Portland cement concrete does not constitute a prohibited “product” within the meaning of LSA-R.S. 38:2290. Thus, for the reasons delineated therein, the assignment of error and argument set forth in this appeal likewise have no merit.
Citing Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354 (La.1991), plaintiff further contends that the bidding process was defective herein as a violation of the legislative and jurisprudential mandate requiring uninhibited competitive bidding. As plaintiff correctly notes, the Supreme Court found that* “the Closed Specification Statute was designed to supplement the Public Bid Law by prohibiting the use of closed specifications which exclude products of equal utility and appearance and consequently prevent or restrict full and free competition.” Louisiana Associated General Contractors, Inc., 586 So.2d at 1365. However, as set forth in the companion ease herein, we have determined that the bidding process was not stifled herein. Clearly, Portland cement concrete was readily available to all contractors. Moreover, based on the evidence of record, there was ample competition in the bidding of the project. Thus, we find no merit to this argument.
Plaintiff further contends the trial court erred in “failing to apply the ^Louisiana Civil Code to interpret the law in accordance with its purpose and policy.” Although plaintiff does not specify exactly which provision of the Civil Code the trial .court failed to apply, there is some discussion in plaintiffs brief in reference to LSA-C.C. art. 10.[5] Assuming that the purpose of the Closed Specification Statutes is to “assure uninhibited competitive *439 bidding,” we find no error in the trial court’s interpretation of LSA-R.S. 38:2290, et seq. or any failure on behalf of the trial court in its application of the Louisiana Civil Code. Instead, as set forth in the companion case, we have determined that the bidding process was competitive herein, and that the design specifications were not drawn so to improperly inhibit the bidding process on this project.
Plaintiff contends that the trial court erred in denying the relief requested through a preliminary injunction, contending that the trial court should have found that Portland cement concrete and asphaltic concrete are of equal quality and utility. Based on the overwhelming evidence of record in these proceedings, as reviewed at length in the companion appeal, we likewise conclude that a legitimate basis existed for the DOTD’s design specifications, ia, that Portland cement concrete and asphaltic concrete are not equivalent in terms of quality, performance, appearance, strength and utility. Thus, the trial court was legally correct in denying Diamond B’s request for injunctive and declaratory relief.
These assignments are without merit.
CONCLUSION
For the above and foregoing reasons, the April 14, 2000 judgment of the trial court denying plaintiffs application for a temporary restraining order and 17preliminary injunction is affirmed. Costs in this matter in the amount of $1,225.71 are hereby assessed against plaintiff, Diamond B.
AFFIRMED.

. LSA-R.S. 38:2290 reads in pertinent part:
A. No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all products other than the one specified would detract from the utility of the building or except in those cases where a particular material id required to preserve the historical integrity of the building or the uniform appearance of an existing structure.

. See Diamond B. Construction, Inc. v. Louisiana Department and Development, 00-1583 (La.App. 1st Cir. 12/22/00), 780 So.2d 439 also rendered this date.

. See Diamond B. Construction Company, Inc. v. Louisiana Department of Transportation and Development, 00-1007 (La.App. 1st Cir.8/4/00).

. LSA-C.C. art. 10 provides as follows:
When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.